# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 12-294(1) (DWF/TNL) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| Marquis Leval Cotton, | |
| Defendant. | |

This matter is before the Court upon Defendant Marquis Leval Cotton's ("Defendant") objections (Doc. No. 38) to Magistrate Judge Tony N. Leung's June 11, 2013 Report and Recommendation (Doc. No. 34) insofar as it recommends that Defendant's Motion to Suppress (Doc. No. 22) be denied. The Government declined to respond to Defendant's objections. (Doc. No. 41.)

The Court has conducted a *de novo* review of the record, including a review of the arguments and submissions of counsel, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b). The factual background for the above-entitled matter is clearly and precisely set forth in the Report and Recommendation and is incorporated by reference for purposes of Defendant's objections.

Having carefully reviewed the record, the Court concludes that Defendant's objections do not warrant departure from the Magistrate Judge's ultimate Recommendation. Defendant does not dispute Magistrate Judge Leung's conclusion that a seizure occurred when law enforcement ordered Defendant to stop. (Doc. No. 39 at 1.)

Rather, Defendant argues that the officers did not have a reasonable, articulable suspicion of criminal activity sufficient to justify a *Terry* stop. (*Id.* at 5-12.)

The Court agrees with the Magistrate Judge's initial conclusion that Defendant was seized for Fourth Amendment purposes "when he submitted to Officer Suchta's oral command to stop." (Doc. No. 34 at 6.) While the Court also finds that, based on the particular facts and circumstances presented here, law enforcement did have an objectively reasonable and particularized basis upon which to suspect Defendant of criminal activity at the time the officers initiated the seizure, the basis for the Court's conclusion differs from that of Magistrate Judge Leung. The Court articulates its reasoning herein.

In order to justify an investigatory stop, there must be "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1968). Law enforcement must have a "reasonable suspicion to believe that criminal activity 'may be afoot'" to satisfy the Fourth Amendment. *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *see United States v. Arvizu*, 534 U.S. 266, 273 (2002) (noting that courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing"). In support of his finding of reasonable suspicion to support the stop, Magistrate Judge Leung relied on the following circumstances:

> (1) Defendant's presence in a high-crime area, (2) the throwing of keys from the third floor to persons outside the building contrary to the property owner's rules, and (3) the unidentified male companion picking up the

2

> keys, going quickly to the building, ignoring Officer Suchta's order to stop, opening the door with the keys, and pulling the door shut.

(Doc. No. 34 at 8.) Whether officers[1] had reason to suspect Defendant, or the other individual with him, of criminal activity *after* they ordered the men to stop is inconsequential with respect to the constitutionality of the initial seizure. Therefore, that Defendant's companion failed to comply with the order to stop and entered the building is irrelevant for purposes of the Court's analysis. With respect to the initial throwing of the keys by an apartment resident, the violation of apartment policy (notably, by a resident, and not Defendant) is insufficient to generate an objectively reasonable suspicion of criminal activity, even in combination with Defendant's presence in a high-crime neighborhood.[2] Of course, retrieving keys thrown from a balcony is not a crime.

Still, and importantly, the behavior of Defendant and his companion, when confronted by law enforcement, must be taken into consideration. At the time of the

---

[1] There appears to be no dispute that, despite being off-duty here, the uniformed officers, in a marked squad car, acted as state actors for purposes of the Fourth Amendment. *See Griffin v. Maryland*, 378 U.S. 130, 135 (1964) ("If an individual is possessed of state authority and purports to act under that authority, his action is state action."); *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999) ("[I]t is clear that even though Raso was working off duty as a security guard, she was acting under color of state law: she was wearing a police uniform, ordered Abraham repeatedly to stop, and sought to arrest him."). *Contra, e.g., United States v. Cintron*, 482 Fed. Appx. 353, 356-58 (10th Cir. 2012) (finding off-duty police officer acted in his private capacity as a security guard when he was not wearing a uniform, did not identify himself as a police officer, and did not conduct an arrest) (citing *Chapman v. Higbee Co.*, 256 F.3d 416, 426 (6th Cir. 2001), *vacated by Chapman v. Higbee Co.*, 270 F.3d 297 (6th Cir. 2001)).

initial encounter, officers observed an apartment resident drop keys off a balcony (in a high-crime area, but in broad daylight) to where Defendant and his companion were standing below, in contravention of apartment policy. This observation alone would be insufficient to generate a reasonable suspicion of criminal activity as described above. What transpired next is more important for purposes of the Court's analysis. Officer Kocher instructed the men "that they were not allowed to take those keys." (Doc. No. 29 ("Tr.") 13.) While Defendant complied with the instruction, Defendant's companion ignored the instruction, picked up the keys, and approached the back door of the apartment building "and started to unlock it." (Tr. 14-15.) At that point, Officer Suchta yelled: "Stop." (Tr. 14.) It was at that moment that the seizure occurred.

The Court finds that Defendant's presence in an area known for its criminal activity, combined with his companion's failure to comply with instructions not to pick up the keys and that individual's evasive behavior in attempting to flee the scene toward the apartment building's entrance, rose to the level of reasonable suspicion sufficient to justify the initial order to stop. Under those circumstances, it would be reasonable for an officer to suspect both men of criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 7 (1968) (stop and frisk conducted on all three individuals observed together, not just the two who had been peering suspiciously into store window); *see also Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000) (finding an individual's flight from police in a high-crime area warranted reasonable suspicion of criminal activity).

---

[2] As the Magistrate Judge correctly pointed out, "Defendant's presence in a high-crime area is, of course, insufficient on its own to generate reasonable suspicion." (Doc.

Although Defendant remained still and complied with the direction not to take the keys, any evasive behavior on the part of Defendant's companion in picking up the keys and attempting to unlock the door, when viewed in combination with other information known to law enforcement, rose to the level of a reasonable suspicion that both men were engaged in criminal activity. The totality of the circumstances here justified a brief investigatory stop under *Terry*, since it was objectively reasonable for an officer to suspect both Defendant and his companion of criminal activity at the time Officer Suchta initiated the seizure.[3]

Officer Suchta claims that he then "quickly walked towards" Defendant. (Tr. 15.) As Officer Suchta approached Defendant, Defendant "made a motion with his hands to his front waistband," in response to which Officer Suchta testified: "The first thought that went through my head is, he is reaching for a weapon." (Tr. 15.) Officer Suchta then proceeded to restrain and handcuff[4] Defendant while Officer Kocher conducted a pat-down search, pursuant to which Officer Kocher retrieved a pistol from Defendant's front waistband. (*See* Tr. 15.) The Court thus concludes that Officer Suchta reasonably

---

No. 34 at 7 (citing *Brown v. Texas*, 443 U.S. 47, 52 (1979)).)

[3] Officer Suchta indicated at the hearing that any particularized suspicion he had pertained to Defendant's companion because "he evaded me and pulled the door shut," and that Officer Suchta only had "a suspicion about [Defendant] because he was with that male." (*See* Tr. 31.) Again, and importantly, Officer Suchta yelled "stop" (the point at which the seizure occurred) *before* the other male entered the building; thus the fact that the individual failed to comply with the order to stop is irrelevant for purposes of evaluating the basis for that order in the first instance, and the constitutionality of its effective seizure of Defendant. Still, the behavior of Defendant's companion *before* the order to stop is properly considered by the Court.

feared for his safety and suspected Defendant of being armed and dangerous as articulated by Magistrate Judge Leung. (*See* Doc. No. 34 at 8-9.)

The Court concludes that, at the time law enforcement ordered Defendant and his companion to stop, the officers had a constitutionally permissible basis to do so. It was also reasonable for Officer Suchta to have feared for his safety at the time he observed Defendant's furtive movements in reaching for his waistband. Consequently, any evidence seized pursuant to the pat-down search is admissible, and the Court denies Defendant's motion to suppress.

Based upon the *de novo* review of the record and all of the arguments and submissions of the parties, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

### ORDER

1. Defendant Marquis Leval Cotton's objections (Doc. No. [38]) to Magistrate Judge Tony N. Leung's Report and Recommendation are **OVERRULED**.

2. The Court **ADOPTS** Magistrate Judge Tony N. Leung's June 11, 2013 Report and Recommendation (Doc. No. [34]) for the reasons and to the extent set forth herein.

---

[4] *See, e.g., United States v. Navarrete-Barron*, 192 F.3d 786, 791 (8th Cir. 1999) (concluding that use of handcuffs during *Terry* stop may be a reasonable precaution).

3. Defendant Marquis Leval Cotton's Motion to Suppress (Doc. No. [22]) is

**DENIED**.

Dated: August 2, 2013          s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge